UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| BERNARD HARDRICK,<br>Petitioner,<br><br>v.<br><br>HOWARD,<br>Respondent. | Case No. 24-10912<br>Honorable Shalina D. Kumar |

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS***

Bernard Hardrick, ("Petitioner"), confined at the Baraga Maximum Correctional Facility in Baraga, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for conducting criminal enterprise, Mich. Comp. Laws § 750.159i(1), three counts of false pretenses ($ 1,000 but less than $ 20,000), Mich. Comp. Laws § 750.218(4)(a), and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12. For the reasons that follow, the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

## I. Background

A jury convicted Petitioner in Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of

Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> For the most part, the underlying facts of these cases are straightforward and were admitted by defendant at trial. Within a couple of weeks of being paroled from prison on June 16, 2015, defendant found so-called "abandoned" or vacant homes in Wayne County. His plan was to utilize the doctrine of "adverse possession" to claim an "interest" in the properties and then sell the properties. [1] To effectuate this plan, quitclaim deeds were created, either by him or at his direction, that showed the properties being transferred from himself to one of his companies. Defendant recorded these deeds with the Wayne County Register of Deeds. Defendant would then list the properties on the Craigslist website for sale or lease to own. When prospective buyers inquired about the properties, defendant met them at the properties, told them he was the owner, and showed them the quitclaim deeds as "proof" that he held title.
>
> Defendant was originally tried in 2016 and convicted of nine counts of forgery of a document affecting real property, MCL 750.248b, nine counts of uttering and publishing a document affecting real property, MCL 750.249b, three counts of using false pretenses to obtain money in an amount of $1,000 or more but less than $20,000, MCL 750.218(4)(a), and one count of conducting a criminal enterprise, MCL 750.159i(1). In a prior appeal, this Court reversed the convictions of forgery and uttering and publishing because the quitclaim deeds that were at the heart of those charged crimes were not "falsely made." *People v. Hardrick*, unpublished per curiam opinion of the Court of Appeals, issued December 19, 2017 (Docket Nos. 333568 & 333898), p. 5. In other words, the instruments "did not purport to

[1] Defendant explained that, while imprisoned, he learned about adverse possession while conducting legal research in the law library. (Footnote original).

be anything other than quitclaim deeds conveying *whatever interest defendant had in the property* to his company or vice versa." *Id.* (emphasis added). The fact that defendant held no legal interest in the properties did not affect the authenticity of the deeds.

This Court also held that there was sufficient evidence to support defendant's convictions of conducting a criminal enterprise and false pretenses, *id*. at 3-5, but still reversed those convictions and remanded to the trial court for a new trial on those four counts because defendant's right to self-representation was violated, *id.* at 6-7. Accordingly, this Court remanded for a new trial on the charges of conducting a criminal enterprise and three counts of using false pretenses to obtain money in an amount of $1,000 or more but less than $20,000. *Id.* at 9.

Although defendant stated that he had recorded deeds for 21 properties, the retrial primarily involved five properties: 18300 Glastonbury in Detroit, 3290 Sherbourne in Detroit, 13591 Lenore in Redford, 10065 West Outer Drive in Detroit, and 12661 Fordline in Southgate.[2] Evidence was presented that at the time of the transactions at issue, defendant had no property interest in the various properties. Indeed, during the summer of 2015, after their respective foreclosures, the following people or banks owned the various properties: M&T Bank owned the Glastonbury property after a March 15, 2012 sheriff's sale; Bank of America owned the Sherbourne property after a February 26, 2015 sheriff's sale; Chase Bank owned the Lenore property after a June 14, 2012 sheriff's sale; MetLife Bank owned the Outer Drive property after a January 17, 2013 sheriff's sale; and Cynthia

---

[2] Specifically, a fifth amended information, which was the most current information leading up to the retrial, alleged in Count 1 that defendant had conducted a criminal enterprise with the predicate offenses being five instances of engaging in false pretenses for the Glastonbury, Sherbourne, Lenore, West Outer Drive, and Fordline properties. In Count 2, defendant was charged with false pretenses related to the Glastonbury property. In Count 3, defendant was charged with false pretenses related to the Sherbourne property. And in Count 4, defendant was charged with false pretenses related to the Lenore property. (Footnote original).

> Bowman had been the owner of the Fordline property since November 26, 1993. There was no evidence that any of these owners transferred any interest in the properties to defendant or his companies.
> Defendant did not deny recording quitclaim deeds for these various properties and informing prospective purchasers that he was the “owner” before “selling” the properties to these individuals. His defense at trial was that no deceit was involved because he thought that he was following the law of adverse possession. While defendant acknowledged that adverse possession takes 15 years to obtain “clear title,” he asserted that he thought that before that time elapsed, he still had “the right to exercise powers and privileges of ownership.”
>
> *People v. Hardrick*, No. 348347, 2021 WL 2178930, at *1–2 (Mich. Ct. App. May 27, 2021).

Petitioner’s conviction was affirmed on appeal. *Id.*, *lv. den.* 512 Mich. 907, 993 N.W.2d 863, 864 (2023); *reconsideration den.* 513 Mich. 890, 996 N.W.2d 453 (2023); *cert. den. Sub nom Hardrick v. Michigan,* 144 S. Ct. 838 (2024).

Petitioner seeks a writ of habeas corpus on the following grounds: (1) Petitioner was denied his constitutional rights to be present, to self-representation, and to counsel when the judge ordered Petitioner removed from the courtroom during the prosecutor’s closing arguments, (2) Petitioner was denied his right to present a defense when the judge refused to instruct the jury on the defenses of adverse possession and claim-of-right, (3) Petitioner was denied fair notice of the charges when the prosecutor failed to file an information regarding one of the cases that had been consolidated

for trial and the information filed regarding the other case was defective, and (4) the evidence was legally insufficient to convict.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

## III. Discussion

### A. Claim # 1. Petitioner's claim that his right to be present, his right to self-representation, and his right to counsel were violated.

Petitioner first argues that his right to be present at his trial, his right to self-representation, and his right to counsel were violated when the judge removed him from the courtroom for a portion of the prosecutor's closing argument and the rebuttal argument.

Respondent contends that this issue is procedurally defaulted because Petitioner failed to object at trial and the Michigan Court of Appeals relied on this failure to object to his removal to conclude that Petitioner failed to preserve the issues for appellate review. Petitioner argues that these claims are preserved because he raised them in a post-trial motion for a new trial.

It is unnecessary to resolve the procedural default issue because Petitioner's underlying claims are without merit. *See Post v. Bradshaw*, 621 F.3d 406, 426 (6th Cir. 2010).

The Michigan Court of Appeals in their opinion laid out the factual basis behind Petitioner's claims:

> During the prosecutor's closing arguments, defendant, representing himself, interrupted no fewer than 10 times. Each time defendant took exception with something the prosecutor said and attempted to place an objection on the record. After the third interruption, the trial court stated:
>
> > I can't tell the prosecutor how to conduct her closing argument as I can't tell you how to conduct yours, as long as it is orderly and it reflects what the evidence in the case said.
> >
> > So please don't interrupt anymore. Closing arguments are not evidence.
>
> Despite the trial court's admonishment to not interrupt anymore during closing arguments, defendant interrupted the prosecutor's very next statement, which characterized defendant as "scamming victim after victim." The court then told defendant to "[h]old your objections until the end of the arguments and then we'll make a record. Keep track of them and we'll make a record." The court further noted that if defendant continued to interrupt, it was going to deduct time from his closing arguments.
>
> Undeterred, defendant interrupted the prosecutor's argument another seven times, for a total of 10 times. After this tenth interruption, the trial court excused the jury and had defendant removed, saying:
>
> > Mr. Hardrick, I told you at the beginning of this trial that if you continued, I almost excluded you from being present in your own trial and that you would be back there in the cell listening to it over a microphone.

> You have continually tried to make a mockery of the legal system, of the court system. You don't respect yourself, you don't respect the citizens who are present, the Judge's staff, you don't respect anyone. You claim to be as good a lawyer as any lawyer who has a certification with ... that training but you don't respect it. So you are really showing us a large degree of confusion. But I allowed you to represent yourself because I was convinced that you could do that and you have done that. But you are disobeying this court order. I told you yesterday when you were on the stand not to talk about the appellate process in this case. You still told the jury that the case has been appealed, that the case had been reversed and the Supreme Court had done this, this and this, and I continually told you not to do it. I said if you continued to do it I was going to discontinue your testimony. I didn't discontinue your testimony. I let you go on and disrespect this Court and disregard this Court, okay.
>
> Today I keep telling you that these are closing arguments, they're not evidence. Don't improperly interrupt the prosecutor when she's talking about what the evidence showed and what the prosecutor's position is on this case. You will have an opportunity to do it when we bring you back from the cell.
>
> So I am going to exclude you from this trial right now. We are going to set up the microphone in the cell so we can finish this closing argument. When it is your turn, we'll bring you out. If you disregard the Court's order at that point, then I am going to discontinue your closing arguments. I am going to charge the jury and then a higher court can decide if I was right or wrong.
>
> Let's take him back to the back. [[3]]

---

[3] It appears that the trial court misspoke when it used the term "microphone" and instead meant "speaker." There is no indication that the court intended to allow defendant to speak to the courtroom through a microphone, which would have frustrated the very purpose of defendant's removal. (Footnote original).

> Although defendant was removed, standby counsel remained at defense table.
>
> The prosecutor subsequently finished the last portion of her closing argument without interruption, which encompassed approximately three pages in the transcript. After defendant was brought back in and conducted his closing argument, he was led out again for the prosecutor's rebuttal argument, which encompassed about two pages of the transcript. [4]
>
> *People v. Hardrick*, 2021 WL 2178930, at *2–3.

A criminal defendant has a right to be physically present at every stage of his trial. *Kentucky v Stincer*, 482 U.S. 730, 745 (1987). However, a "defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Illinois v Allen*, 397 U.S. 337, 343 (1970). Once lost, the right to be present can "be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Id.*

The Michigan Court of Appeals rejected Petitioner's right to be present claim, concluding that "with defendant repeatedly interrupting the

[4] The prosecutor's argument and rebuttal encompassed approximately 20 pages total in the transcript. (Footnote original).

prosecutor's argument for unfounded reasons, it is clear that defendant was being disruptive and was subject to being removed." *People v. Hardrick*, 2021 WL 2178930, at *4.

Petitioner argues that he should not have been removed from the courtroom by the judge because she had failed to warn him that his continued interruption of the proceedings could lead to his removal from the courtroom. It is true "that a trial court must warn a defendant of the possible consequences of continued misbehavior prior to removing him from the courtroom[,]." *Gray v. Moore*, 520 F.3d 616, 622 (6th Cir. 2008). However, the judge in this case did warn Petitioner, both at a pre-trial conference conducted the day before trial, and in an extensive conversation with Peitioner the first day of trial, that if he was disruptive he would be removed from the courtroom and be unable to represent himself. ECF No. 7-27, PageID.2291-92; ECF No. 7-28, PageID.2299-2302. Petitioner therefore was warned that any misbehavior on his part could lead to his removal from the court.

The judge's decision to remove Petitioner from the courtroom during the prosecutor's closing argument was not an unreasonable application of clearly established Supreme Court precedent regarding his right to be present in courtroom at every stage of his trial, in light of the fact that

Petitioner was removed from the courtroom only after he had been warned several times both before and at trial to behave appropriately and not to disrupt the proceedings, but he continued to be disruptive throughout the prosecutor's closing argument. Accordingly, Petitioner is not entitled to habeas relief on his right to be present. *See Lewis v. Robinson,* 67 F. App'x 914, 922 (6th Cir. 2003).

Petitioner's self-representation claim suffers the same fate.

As an initial matter, Petitioner argues that this Court should adjudicate this claim *de novo* and not subject to the AEDPA's deferential review because the Michigan Court of Appeals failed to address this issue on Petitioner's appeal.

When the evidence suggests that a federal claim is rejected by a state court "as a result of sheer inadvertence," the claim has not been adjudicated "on the merits," for purposes of applying the AEDPA's deferential standard of review contained in 28 U.S.C. § 2254(d). *See Johnson v. Williams*, 568 U.S. 289, 302-03 (2013).

The Michigan Court of Appeals in this case did not ignore or overlook Petitioner's self-representation claim. It is true that the Michigan Court of Appeals appeared to merge Petitioner's self-representation and right to counsel claims under a single "right to representation" claim. *People v.*

*Hardrick*, 2021 WL 2178930, at *2. However, the Michigan Court of Appeals later explicitly brought up the self-representation issue when rejecting Petitioner's entire right to representation claim:

> Defendant also argues that his removal denied him the right to representation. Defendant's argument has no merit. First, it is undisputed that defendant had waived his right to counsel and instead desired to represent himself. Second, defendant identifies no authority that, merely because he was representing himself, his right to self-representation could not be waived on account of disruptive behavior.
>
> *Id.*, at * 5.

The Michigan Court of Appeals therefore addressed Petitioner's self-representation claim on the merits, thus, their decision is reviewed through the lense of the AEDPA's deferential standard of review.

Criminal defendants have a constitutional right to conduct their own defense at trial, if they voluntarily and intelligently elect to do so. *Martinez v. Court of Appeal of California, Fourth Appellate Dist.,* 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 807 (1975). However, the right to self-representation is not absolute. *Martinez*, 528 U.S. at 161.

Although a criminal defendant has a right to conduct his own defense, he or she must be "able and willing to abide by rules of procedure and courtroom protocol." *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984). Indeed, a "trial judge may terminate self-representation by a defendant who

deliberately engages in serious and obstructionist misconduct." *Faretta,* 422 U.S. at 834, n. 46. Further, "[T]he right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Id.*

In light of the fact that Petitioner disrupted the prosecutor's closing argument and refused to follow the judge's directive to refrain from interrupting the prosecutor during her closing argument, the trial court did not abuse its discretion in removing Petitioner briefly from the courtroom during the closing arguments even if this infringed on Petitioner's right to self-representation. *See e.g. Lewis v. Robinson,* 67 F. App'x at 919. The judge, in fact, did not even terminate Petitioner from representing himself, but only removed him from the courtroom for a short portion of the prosecutor's closing argument and her rebuttal. Petitioner was able to make his own closing argument to the jury. The Court did not violate Petitioner's right to self-representation.

Petitioner also argues that his inability to represent himself after being removed from the court was compounded by the fact that although he had standby counsel to assist him through trial, the judge forgot to expressly upgrade counsel to be primary counsel while Petitioner was absent from the court.

The Michigan Court of Appeals rejected this claim:

> Defendant also claims that the issue was “compounded” because the trial court never expressly designated his standby counsel as the primary counsel after defendant's removal. We agree that, ideally, the trial court should have informed standby counsel that she was no longer “standing by” after defendant’s removal. But by definition, being “standby” meant that counsel would take over the representation of defendant if he was unable or unwilling to continue representing himself. See *Black’s Law Dictionary* (11th ed.), (defining “standby counsel” as “[a] lawyer appointed by the court to be prepared to represent a defendant who waived the right to counsel” and “[a] court-appointed or privately hired lawyer who is prepared to assume representation of a client if the client’s primary lawyer withdraws or is fired by the client, of if a pro se defendant’s self-representation ends”). Thus, it is not obvious or clear that defendant was without representation after his removal. Although the trial court did not expressly designate counsel as “primary” counsel, there is nothing in the record that shows that counsel did not nonetheless take on that role. The fact that counsel did not raise any objections during the remainder of the prosecutor’s closing argument or during the prosecutor’s rebuttal argument should not be considered significant where defendant does not identify any specific, valid grounds for an objection, and none are apparent. Therefore, defendant cannot show under the plain-error standard that he was without representation during closing arguments.
>
> *People v. Hardrick*, 2021 WL 2178930, at *5 (internal footnote omitted).

There are two problems with Petitioner’s right to counsel claim.

First, Petitioner had waived his right to counsel and asked to represent himself at trial. Petitioner did have standby counsel appointed to assist him but he never reasserted his right to be represented by counsel.

The United States Supreme Court has never explicitly addressed a criminal defendant's ability to reassert his right to counsel once he has validly waived it. *Marshall v. Rodgers*, 569 U.S. 58, 62 (2013). The Supreme Court has noted the tension between a defendant's Sixth Amendment right to the assistance of counsel and a defendant's Sixth Amendment right to self-representation. *Id.*, at 62-63. In *Marshall*, the Supreme Court held that the state appellate court's determination that petitioner's Sixth Amendment right to counsel was not violated by the trial court's denial of his request for counsel to help file a motion for a new trial, which was made after he had waived his right to counsel on three occasions, was neither contrary to, nor an unreasonable application of, clearly established federal law as set forth by Supreme Court. In so ruling, the Supreme Court noted that they had never held that there was a strong presumption against refusing a defendant's post-trial request for counsel or that a defendant's post-trial revocation of his waiver should be allowed absent a showing of bad faith. *Id.* Petitioner here represented himself at trial. His removal from court did not violate his right to counsel because he had already waived that right.

In any event, the Michigan Court of Appeals' decision that Petitioner was not without the assistance of counsel due to the presence of standby counsel was reasonable, precluding relief. In certain circumstances,

standby counsel can function as counsel within the meaning of the Sixth Amendment. *See United States v. Oreye*, 263 F.3d 669, 672–73 (7th Cir.2001) (doubting "whether there had been a denial of counsel ..., because [standby counsel], while labeled standby counsel, was functionally counsel, period"). As mentioned above, a court "may terminate self-representation by a defendant who deliberately engages in serious obstructionist misconduct." *Faretta*, 422 U.S. at 834, n. 46. Standby counsel may be appointed, even over a defendant's objection, "to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Id.* In the present case, standby counsel remained in the courtroom during the brief time that Petitioner was absent from the court. Standby counsel's presence in the courtroom while Petitioner was in the lockup in back satisfied Petitioner's right to counsel. *See United States v. Keiser*, 319 F. App'x 457, 459 (9th Cir. 2008) (court did not err in terminating defendant's right to self-representation based on his disruptive and defiant behavior and unwillingness to follow court rules; the misconduct was serious, warranting defendant's removal from the courtroom, and the court had appointed standby counsel so that defendant was at all times represented); *See also Sullivan v. Pitcher*, 82 F. App'x 162 (6th Cir. 2003) (Standby counsel's

involvement satisfied defendant's right to counsel, during plea stage of proceedings in which defendant was kept in audible lockup. Counsel delivered plea form to defendant in lockup, acted as intermediary in plea negotiations with prosecutor, spoke on record during plea proceeding, and acknowledged to court that he had spoken to defendant about plea and had received advice). Petitioner is not entitled to habeas relief on his first claim.

**B. Claim # 2. The jury instruction claim.**

Petitioner next argues he was denied the right to present a defense when the judge refused to instruct the jurors on the defenses of adverse possession and claim-of-right.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977).

A defendant in a criminal trial has the right to "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "[A] necessary corollary of this holding is the rule that a defendant in a criminal trial has the right, under appropriate circumstances, to have the jury instructed on his or her defense, for the right to present a defense would be meaningless were a trial court completely free to ignore that defense when giving instructions." *See Taylor v. Withrow,* 288 F.3d 846, 852 (6th Cir. 2002). A defendant is therefore entitled to a jury instruction as to any recognized defense for which there exists evidence sufficient for a reasonable juror to find in his or her favor. *Mathews v. United States*, 485 U.S. 58, 63 (1988).

The Michigan Court of Appeals concluded that the trial court did not err in failing to instruct the jurors on the defense of adverse possession, because the evidence did not support such an instruction under Michigan law:

> "To establish adverse possession, the party claiming it must show 'clear and cogent proof of possession that is actual, visible, open, notorious, exclusive, continuous and uninterrupted for the statutory period of 15 years, hostile and under cover of claim of right.'" *Beach v. Lima Twp.*, 489 Mich. 99, 106; 802 N.W.2d 1 (2011), quoting *Burns v. Foster*, 348 Mich. 8, 14; 81 N.W.2d 386 (1957). In this instance, there was no evidence to show that the requirements of adverse possession had been met. Even assuming that defendant met the "actual, visible, open, notorious, exclusive, [and] continuous" requirements of possession, he did not meet the 15-year requirement. Indeed, as the prosecutor noted in her closing argument, defendant barely

> had 15 days of "possession," let alone 15 years. Notably, defendant admitted that he did not meet the 15-year requirement as well. Therefore, the trial court did not err by refusing to provide an instruction on adverse possession when it was undisputed that the elements were not satisfied.
>
> *People v. Hardrick*, 2021 WL 2178930, at *6 (internal footnote omitted).

The Michigan Court of Appeals further noted that Petitioner was able to present his defense that he had no intent to deceive anyone because he thought he was acting within his understanding of the law of adverse possession and that no instruction on the actual law of adverse possession would have helped him with this defense. *Id.*, at * 7.

Petitioner also claims that the judge erred in failing to give the following claim-of-right instruction. *See People v. Hardrick*, 2021 WL 2178930, at *7:

> Claim of title or claim of right is essential to adverse possession, but it is not necessary that an adverse claimant should believe in his title, or that he should have any title. He may have no shadow of title and be fully aware of that fact, but he must claim title. He may go into possession without any claim of title, but his possession does not become adverse until he asserts one; and he may assert it by openly exercising acts of ownership, with the intention of holding the property as his own to the exclusion of all others. [Some capitalization altered.]

The Michigan Court of Appeals concluded that to the extent that Petitioner was arguing on appeal that the judge should have given the claim of right instruction for larceny crimes found in M. Crim. JI 7.5, that claim was unpreserved for appeal because Petitioner did not request that instruction in

the trial court. The Michigan Court of Appeals went on to hold that in any event the trial court did not err in failing to give an instruction regarding claim of right as a defense to larceny crimes because real property cannot be the subject of a larceny under Michigan law. *People v. Hardrick*, 2021 WL 2178930, at *7 (citing *People v. March*, 499 Mich. 389, 401; 886 N.W.2d 396 (2016)).

The Michigan Court of Appeals further concluded that any claim-of-right instruction relating to adverse possession was unwarranted under Michigan law:

> Moreover, the trial court did not err by declining to provide the requested instruction regarding a claim of right. Defendant obtained this "instruction" from *Smith v. Feneley*, 240 Mich. 439, 441-442; 215 N.W. 353 (1927), and it pertains to adverse possession. Specifically, the Court was addressing the "claim of right" element of adverse possession, explaining that "[t]he belief or knowledge of the adverse claimant is not as important as his intentions. The intention is the controlling consideration and it is not the knowledge or belief that another has superior title, but the recognition of that title that destroys the adverse character of possession." *Id.* at 441. As already discussed, any instruction on adverse possession was not warranted, so this further layer of law with regard to adverse possession also was not warranted. Notably, nothing prevented defendant from explaining to the jury that this is the law or text he found, which formed the basis for his belief that he had actual title or right to the properties. In other words, the relevance of this passage goes only to defendant's state of mind after reading it. Accordingly, it would not have been proper for the court to instruct the jury on it. Instead, the law, i.e., the text that defendant found and supposedly relied on, was more *evidentiary* in nature as a way to explain his thought process.

*People v. Hardrick*, 2021 WL 2178930, at *7 (emphasis original).

The Michigan Court of Appeals also noted in a footnote that:

> Moreover, defendant's interpretation at trial of this excerpt from *Smith* is incorrect. This provision does not mean that an adverse possessor *actually* has all rights and privileges of ownership before the expiration of the 15-year period. Instead, an adverse possessor must act as *if* he has such rights, but the possessor has no actual title or rights before the expiration of that 15-year period.

*Id*., at *7, n. 11 (emphasis original).

State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). "[D]ue process does not require that a defendant be permitted to present any defense he chooses. Rather, states are allowed to define the elements of, and defenses to, state crimes." *See Lakin v. Stine,* 80 F. App'x 368, 373 (6th Cir. 2003) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 484-87 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86, (1986)). The circumstances under which a criminal defense may be asserted is thus a question of state law. *Id.* The nature of a particular jury instruction that is given is a matter of state law, and a federal court is not at liberty to grant a writ of habeas corpus simply because the federal court finds the state court's decision was incorrect under state law. *Newton v. Million*, 349 F.3d 873, 879 (6th Cir. 2003). "Generally speaking, a state court's interpretation of the propriety of a jury instruction under state law does not

entitle a habeas claimant to relief." *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012).

The Michigan Court of Appeals determined that under Michigan law, Petitioner was not entitled to an instruction on an adverse possession or claim-of-right defense because neither the facts nor the law supported either defense. This Court is bound by that determination and cannot grant habeas relief to Petitioner on his instructional error claim.

**C. Claim # 3. The inadequate information claim.**

Petitioner in his third claim alleges that on retrial he was denied fair notice of the charges against him because the information failed to inform him which charged counts were associated with which lower court file, and because the information alleged that Redford Township was the only victim. After the Michigan Court of Appeals reversed and remanded Petitioner's first conviction and before his retrial commenced, a fifth amended information was issued, which listed only a single case number, "8215007481." And under "Complainant or Victim," the information only listed "TOWNSHIP OF REDFORD." (ECF No. 7-21).

The Michigan Court of Appeals rejected Petitioner's claim:

> We find no error requiring reversal on account of the information failing to state which count was associated with which lower court file. For one thing, the information does specify—it clearly provides that all four counts are associated with case

"8215007481," which presumably relates to LC 15-007481-01-FH. Accordingly, the premise for defendant's argument that he was never informed which counts were associated with which lower court files is not supported by the record. Plainly, defendant was notified that all the counts were associated with LC 15-007481-01-FH. The accuracy of this is another matter, but defendant cites no authority for the proposition that a (presumed) error in the listing of a lower-case number on an information is a ground for reversal. Indeed, it is not clear how any such error could be deemed prejudicial. [5] Regardless of what the court number was supposed to be, the information provided defendant with the required notice on the four separate counts. Therefore, his argument related to a purported lack of a lower court file number (or an incorrect lower court file number) does not warrant reversal.

The other aspect of defendant's argument is that the information fails to identify anyone other than Redford Township as a victim. Notably, under MCL 767.45(1), naming a victim is not required. All that is required is to adequately describe the nature of the charged offense. And in the information, it mentioned the specific addresses from the real estate transactions that were associated with each incident of false pretenses. Accordingly, despite the fifth amended information not listing the names of the individuals who had been defrauded on these transactions, the information supplied sufficient information, by virtue of the inclusion of the addresses for the various property transactions, for defendant to know which conduct was at issue. Moreover, contrary to defendant's assertion, the prosecutor did amend the information to add these individual victim names. The fact that this sixth amended information was created after trial is of no moment because that is expressly permitted under the law, as long as there is no prejudice. And defendant cannot show any prejudice because in his first trial, there was evidence presented that all of these named victims had been involved with defendant in the various property transactions. Thus, the addition of the names in

[5] It was undisputed that while there were two different case files originally, the cases were consolidated for trial. (Footnote original).

> the sixth amended information does not and cannot constitute unfair surprise.
>
> *People v. Hardrick*, 2021 WL 2178930, at *9 (internal citation omitted).

A state criminal defendant has a due process right to be informed of the nature of the accusations against him or her. *Lucas v. O'Dea,* 179 F. 3d 412, 417 (6th Cir. 1999). Notice and opportunity to defend against criminal charges as guaranteed by the Sixth Amendment to the United States Constitution are an integral part of the due process protected by the Fourteenth Amendment and therefore apply to state prosecutions. *Cole v. Arkansas,* 333 U.S. 196, 201 (1948); *In Re Oliver,* 333 U.S. 257, 273 (1948). "The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Olsen v. McFaul,* 843 F. 2d 918, 930 (6th Cir. 1988).

Nonetheless, a complaint or indictment need not be perfect under state law so long as it adequately informs the defendant of the crime in sufficient detail so as to enable him or her to prepare a defense. Therefore, an indictment "which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable

in habeas proceedings." *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986); *Dell v. Straub,* 194 F. Supp. 2d 629, 653-54 (E.D. Mich. 2002). An alleged defect in a state court information or indictment is therefore not constitutional error unless a habeas petitioner can establish that: (1) he did not receive adequate notice of the charges; and (2) he was therefore denied the opportunity to defend himself against the charges. See *Roe v. Baker,* 316 F.3d 557, 570 (6th Cir. 2002). Moreover, a charging document need not give "notice of the exact method by which the criminal actions were alleged to have been committed." *Martin v. Kassulke*, 970 F.2d 1539, 1543 (6th Cir.1992).

In addition, "When reviewing amendments to state charging documents in habeas corpus proceedings, the federal courts focus on the questions whether the defendant was surprised by the amendment or otherwise prejudiced in his ability to defend himself at trial." *Rhea v. Jones*, 622 F. Supp. 2d 562, 583 (W.D. Mich. 2008) (*citing Tague v. Richards*, 3 F.3d 1133, 1141–42 (7th Cir. 1993); *Wright v. Lockhart*, 854 F.2d 309, 312–13 (8th Cir. 1988)). Petitioner is not entitled to relief on his claim because he failed to show how he was prejudiced by the alleged defects of the information in this case.

In any event, an accused's constitutional right to notice of the criminal charge or charges brought against him or her can be satisfied by means other than an arraignment, such as a preliminary examination. *See Stevenson v. Scutt*, 531 F. App'x 576, 580 (6th Cir. 2013) (noting that victim's testimony from the preliminary examination provided petitioner with notice of the time frame of the assaults). The testimony from the preliminary examination clearly put Petitioner on notice as to the nature of the charges.

Finally, Petitioner was convicted by a jury after a trial. The Ninth Circuit has observed that neither *Cole v. Arkansas, supra,* nor *In re Oliver, supra,* "foreclose the premise that constitutionally adequate notice may come from evidence presented at trial." See *Troches v. Terhune,* 74 F. App'x 736, 737 (9th Cir. 2003). The testimony of the witnesses at Petitioner's retrial was sufficient to afford Petitioner adequate notice of the charges against him. *See Bruce v. Welsh*, 572 F. App'x 325, 331 (6th Cir. 2014). Petitioner is not entitled to habeas relief on his third claim.

**D. Claim # 4. The sufficiency of evidence claim.**

Petitioner finally argues that the evidence was insufficient to convict him of these offenses.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of

every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

A federal habeas court cannot overturn a state court decision that rejects a sufficiency-of-the-evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court

reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003).

Petitioner was convicted of conducting a criminal enterprise. The Michigan Court of Appeals described the elements of this crime in their opinion affirming Petitioner's conviction:

> MCL 750.159i(1) provides that "[a] person employed by, or associated with, an enterprise shall not knowingly conduct or participate in the affairs of the enterprise directly or indirectly through a pattern of racketeering activity." Racketeering is defined, in relevant part, as "committing, attempting to commit, [or] conspiring to commit ... an offense for financial gain" involving false pretenses. MCL 750.159g(w). And a "pattern of racketeering" is defined, in relevant part, as "not less than 2

> incidents of racketeering," MCL 750.159f(c), where "racketeering" includes incidents of obtaining money or property through false pretenses, MCL 750.159g(w).

*People v. Hardrick*, 2021 WL 2178930, at * 11.

Petitioner was also convicted of three counts of false pretenses between the value of $ 1,000 and $ 20,000. Under Michigan law, the elements of false pretenses are: (1) a false representation concerning an existing fact, (2) knowledge by the defendant that the representation is false, (3) use of the representation with an intent to deceive, and (4) detrimental reliance by the victim. *People v. Reigle*, 223 Mich. App. 34, 37–38, 566 N.W.2d 21 (1997).

Petitioner's first two insufficiency of evidence arguments deal with alleged defects in the information filed in this case. Petitioner first argues that his conducting a criminal enterprise conviction should be vacated because the original information filed in this case only listed a single instance of false pretenses as the predicate offense for the conducting a criminal enterprise charge. His second insufficiency of evidence claim involves around the fact that the fifth amended information, filed before his retrial, named Redford Township as the victim. The Michigan Court of Appeals rejected Petitioner's first sufficiency of evidence claim because a third amended information filed before Petitioner's first trial listed three properties where Petitioner had

committed false pretenses, and the fifth amended information, filed before Petitioner's retrial which led to his current conviction, listed five instances of false pretenses. *People v. Hardrick*, 2021 WL 2178930, at *12. With regard to Petitioner's second insufficiency of evidence claim, the Michigan Court of Appeals noted that Petitioner did "not dispute that there was evidence presented showing that several individuals had given him money on account of his representations that he owned the properties in question." *Id.*

Petitioner is not entitled to relief on either of these claims because he is simply reframing his claim challenging the adequacy of the information or informations filed in this case as a sufficiency of evidence claim. *Cf. United States v. Sullivan*, 118 F.4th 170, 216, n. 22 (2d Cir. 2024) (defendant cannot seek to vacate their conviction by reframing their insufficiency challenge as one directed to the indictment).

Petitioner's primary insufficiency of evidence argument is that there was insufficient evidence to convict him because he had a legal claim to the properties. The Michigan Court of Appeals rejected this claim:

> Defendant next argues that there was insufficient evidence to support his conviction because he actually held a legal claim to the properties. However defendant wishes to characterize his "claim," there was no evidence that he possessed legal title to the properties. On the contrary, there was evidence that at the time defendant "sold" the properties in question, other people or banks owned the properties—not him. Defendant's reliance on his various deeds is grossly misplaced. There is nothing magical

about recording a document with the register of deeds. His recording of quitclaim deeds that purported to give his companies legal title merely transferred whatever interest he had in the properties (which was none) to those entities. There is no question that defendant held no valid property interests in these properties; thus, the quitclaim deeds transferred nothing. This is why defendant's forgery convictions were overturned, but the false-pretenses convictions were not—"the deeds only purported to convey whatever interest defendant or his company possessed, even if neither possessed any legal interest." *Hardrick*, unpub. op. at 5. Defendant's reliance on the doctrine of adverse possession fails for many reasons, but the primary one is that the 15-year statutory period had not elapsed. Indeed, defendant freely admitted this at trial. Thus, as explained in Part III, contrary to defendant's assertions, until that 15-year period lapses, defendant holds no title.

Despite not qualifying to take title under the doctrine of adverse possession, defendant nonetheless would have to be acquitted if he held an honest belief that he was the owner of the properties because false pretenses requires, among other things, that "at the time the pretense was used[,] the defendant must have known it to be false." *People v. Lueth*, 253 Mich. App. 670, 680; 660 N.W.2d 322 (2002). This was a determination for the jury, and the jury found defendant not credible in this regard. As this Court stated previously, "[a]though defendant claimed he believed he was the owner [on account of his understanding of the law], the jury could have reasonably found that defendant knew the representations to be false." *Hardrick*, unpub. op. at 5. Thus, there was sufficient evidence to support defendant's convictions, which all involved false pretenses.

*People v. Hardrick*, 2021 WL 2178930, at *12–13 (internal footnotes omitted).

The Michigan Court of Appeals' determination was reasonable, precluding habeas relief.

Lastly, Petitioner argues that there was insufficient evidence to support his conducting a criminal enterprise conviction because the judgment of sentence showed that the charge was based only on one underlying false-pretenses conviction. But the judgment of sentence listed only the independent crimes for which he was convicted; it did not list each incident of racketeering underlying the conducting-a-criminal-enterprise conviction. In any event, under Michigan law, a jury is not required to find a defendant guilty of the underlying felony offenses in order to convict the defendant of conducting a criminal enterprise so long as the evidence shows that the defendant committed these underlying felonies. *See People v. Speed*, 331 Mich. App. 328, 341, 952 N.W.2d 550, 558 (2020). The evidence in this case established that Petitioner committed the underlying false pretenses charges and was convicted of them as well. Petitioner is not entitled to habeas relief on his fourth claim.

## IV. Conclusion

For these reasons, the Court **DENIES** the petition for writ of habeas corpus. The Court also denies a certificate of appealability to Petitioner. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable

jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability; he failed to make a substantial showing of the denial of a federal constitutional right. *See Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002). However, although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith; the Court **GRANTS** Petitioner leave to proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

s/Shalina D. Kumar
HON. SHALINA D. KUMAR
UNITED STATES DISTRICT JUDGE

Dated: August 21, 2026